David D. GWIN, Plaintiff–Appellee,

and

State of Colorado ex rel. Gale A. Norton, in her official capacity as Attorney General of the State of Colorado, Intervenor–Appellee,

v.

CHESROWN CHEVROLET, INC., a Colorado corporation, Defendant–Appellant.

No. 94CA1943.

Colorado Court of Appeals, Div. V.

April 18, 1996

Rehearing Denied June 27, 1996.

Certiorari Denied Feb. 18, 1997.

Digiacomo & Jaggers, David R. Digiacomo, Gerald H. Jaggers, Douglas J. Perko, Arvada, for Plaintiff–Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney Gen-

eral, Timothy M. Tymkovich, Solicitor General, Eric R. Decator, First Assistant Attorney General, Denver, for Intervenor–Appellee.

Douglas G. McKinnon, Michael G. McKinnon, Littleton, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Chesrown Chevrolet, Inc., appeals the judgment entered upon a jury verdict finding it liable for the discriminatory and unlawful firing of plaintiff, David D. Gwin. We affirm and remand for an award of attorney fees for plaintiff.

Gwin, an African–American, sold cars for Chesrown Chevrolet from January 1993 until May 5, 1993, when he was fired by Chesrown's general manager. The discharge was precipitated by Gwin's voluntary participation in a sales seminar the day before and Gwin's demand for a refund of money paid for that seminar.

A motivational speaker had attended a meeting of the Chesrown sales staff to promote his upcoming sales seminar. The cost of attending the eight-hour seminar was $150, with $75 to be paid by Chesrown and $75 to be deducted from the attending employees' paychecks. The speaker promised that anyone not satisfied with his seminar would receive a full refund on the spot. Many members of the Chesrown sales force signed up for the seminar, including Gwin. Attendance was voluntary and on the employees' own time.

Gwin and two other Chesrown car salesmen drove to the hotel in which the seminar was being held. The other two salesmen are white. The three signed in, began listening to the lecture, but did not find it worthwhile.

During a break in the seminar, the three men asked the speaker for a refund of their $75 fees. He claimed he had not been paid by Chesrown, and told them to seek a refund from the dealership. The three men left the hotel and drove back to Chesrown, found the general manager, and asked for a refund of the $75 seminar fee which was to be deducted from their next paychecks. The manager told them the money had already been deducted and forwarded to the speaker, and

they would have to go back to the seminar and seek recourse from him.

Gwin and one of the other men drove back to the hotel, arrived at the seminar, and waited for the next scheduled break. Again, they requested a refund from the speaker who then called the dealership from the hotel lobby to discuss the matter with the manager. He eventually promised to send the two refund checks.

Gwin and the other salesman returned to the dealership to sell cars for the remainder of the day, but were sent home by their sales supervisor. The next morning, the three reported with the rest of the Chesrown sales staff for the regular sales meeting. However, after roll call, the manager stormed into the room shouting expletives and fired Gwin in front of his peers.

Gwin discovered that the manager had become incensed by their demand for refunds from the speaker, but had decided to fire only Gwin while permitting the others to apologize and keep their jobs.

Gwin sued Chesrown alleging violations of: (1) 42 U.S.C. § 2000e–2 (1988) prohibiting a racially discriminatory firing (Title VII); (2) 42 U.S.C. § 1981 (1993 Supp.) prohibiting a racially motivated termination of a contract (§ 1981); (3) § 24–34–402.5, C.R.S. (1995 Cum.Supp.) prohibiting the termination of an employee for lawful activity engaged in away from and not during employment (§ 24–34–402.5); and (4) outrageous conduct. He also sought punitive damages. The trial court acted as factfinder for Gwin's Title VII claim, but the other claims were tried to a jury.

At trial, Gwin and the other two salesmen testified regarding the seminar and that, on a number of occasions, the manager had used racial slurs on the car lot. Chesrown and the manager maintained that Gwin was drunk and belligerent in his confrontation with the motivational speaker. They also claimed that Gwin was fired for poor sales performance, despite evidence that his sales record was average to above average.

The jury found for Gwin on all claims. On the § 1981 claim, it awarded him $7,628 in back pay and $18,750 in compensatory damages. In a separate verdict, it also awarded

$50,000 for punitive damages. However, because they were instructed not to duplicate their award of damages, the jurors left blank the damage portions of the § 24–34–402.5 and outrageous conduct verdicts. The court also found for Gwin on his Title VII claim, but awarded no additional damages.

### I.

■ Chesrown first argues the verdicts are irreconcilably inconsistent. More specifically, it asserts that the jury's finding that Chesrown fired Gwin because of his race is inconsistent with its finding that he was fired because of his actions at the seminar. We perceive no inconsistency in the verdicts.

Gwin's civil rights claims under § 1981 and Title VII alleged that Chesrown practiced illegal discrimination by firing him because of his race. In contrast, the essence of Gwin's § 24–34–402.5 claim was that Chesrown invaded his privacy by firing him because of a lawful activity that he engaged in on his own time away from the dealership.

Chesrown argues that, even if it fired Gwin for one of these reasons, it could not have fired him for both. According to Chesrown, Gwin either was fired for his race or for his actions in requesting a refund from the motivational speaker. We disagree.

■ Title VII and § 1981 do not require that race be the sole motivating factor in a firing. Race need only be one of multiple factors contributing to an employee's discharge. *See* 42 U.S.C. § 2000e–2(m) (1994) ("an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice."); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (race need only be a motivating factor, not the sole motivating factor, in a Title VII claim); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir.1988) (when § 1981 and Title VII claims arise from identical facts, elements of each claim are construed the same).

Here, under the evidence presented, the jury could have found both that the manager fired Gwin because of his race and because of his actions at the seminar. Hence, there is no inconsistency in the verdict. *See Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo.1994) (jury verdict will not be reversed for inconsistency when the jury was properly instructed and record contains sufficient competent evidence to support verdict).

### II.

Chesrown next argues that the jury's award of $50,000 in punitive damages and $26,378 in back pay and compensatory damages for the § 1981 claim violates § 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A), which limits punitive damage awards to the amount of actual damages awarded. Chesrown's claim is that it is impossible to determine from the verdict forms exactly how the jury intended to apportion the compensatory damage award between the § 1981, § 24–34–402.5, and outrageous conduct claims. Therefore, Chesrown argues that the punitive damage award must be vacated. We are not persuaded.

### A.

■ Contrary to Chesrown's contention, there is no need to apportion the $26,378 in actual damages among the three claims, or to presume the jury intended an apportionment. Here, the jury found for Gwin on all claims. Importantly, each of the underlying tort claims protected a different interest. Section 1981 protected Gwin from racial discrimination. Section 24–34–402.5 protected his off-the-job privacy; the tort of outrageous conduct protected him from malicious or unconscionable treatment.

After finding that defendant's conduct violated each of these protected interests, the jury awarded Gwin $7,628 in back pay and $18,750 in compensatory damages on his § 1981 claim for a total of $26,378. However, because it was instructed not to duplicate its damage awards, it awarded no additional damages for his other claims. Thus, we cannot be certain from the verdicts that the jury found any actual damages for the other claims.

Punitive damages also were awarded on a separate verdict form which did not refer to

any of the underlying torts. However, it would be speculation to presume that the jury intended to punish Chesrown for any tortious conduct other than the § 1981 claim for which the jury awarded damages. We thus reject Chesrown's apportionment argument.

### B.

■ We also reject Chesrown's contention that the award of punitive damages violated § 13–21–102(a)(1).

An award of punitive damages under a § 1981 claim is governed by federal law rather than state law. *T & S Service Associates, Inc. v. Crenson,* 666 F.2d 722 (1st Cir.1981).

■ Federal law does not limit punitive damage awards in civil rights cases to the amount of actual damages awarded, although it does impose ceilings on the total amount of damages recoverable. *See* 42 U.S.C. § 1981a(b)(3) (1993 Supp.). Accordingly, since Chesrown does not assert that any relevant federal damage cap was exceeded in this case, the punitive damages award here is supportable.

### III.

Chesrown's next two contentions are based upon its interpretation of § 24–34–402.5. That statute states in pertinent part:

(1) It shall be a discriminatory or unfair employment practice for an employer to terminate the employment of any employee due to that employee's engaging in any lawful activity off the premises of the employer during non-working hours unless such a restriction:

(a) Relates to a bona fide occupational requirement .... or

(b) Is necessary to avoid a conflict of interest....

### A.

■ Chesrown asserts that the trial court erred in not granting its motion for a directed verdict because Gwin had failed to prove the existence of a "restriction." We do not agree.

Chesrown interprets "restriction" to mean that, in order for the statute to be applicable, an employer first must restrict its employees' off-the-job activities. Under Chesrown's interpretation, only when an employer imposes a restriction does the statute take effect to protect a worker's off-the-job privacy.

However, under this interpretation, an employer could avoid the reach of the statute by simply not warning employees of any restrictions, thus creating an absurd result.

■ We read the statutory provision as containing two separate parts. The first prohibits employers from terminating employees for the reasons enumerated. The second part provides a defense to an employer if that employer has a restriction on an employee's lawful activities which meets one or both of the enumerated exceptions.

Thus, the issue of restrictions of an employee's activities arises only as part of an employer's defense to an action for violation of the statute. Contrary to Chesrown's contention, no specific restriction must be adopted by an employer as a predicate to violating the prohibition.

Given this conclusion, it follows that the trial court did not err in not granting the motion for directed verdict.

### B.

■ Chesrown also argues that § 24–34–402.5 should be struck down as unconstitutionally vague and violative of equal protection. However, because this argument was not raised before the trial court, it has been waived. *Anderson Boneless Beef, Inc. v. Sunshine Health Care Center, Inc.,* 878 P.2d 98 (Colo.App.1994).

### IV.

Chesrown next argues the trial court erred in refusing to instruct the jury that it could not consider Gwin's race in deciding the § 24–34–402.5 claim, and in not permitting Chesrown to invoke the affirmative defense of § 24–34–402.5(1)(a), C.R.S. (1995 Supp.) (bona fide occupational requirement). We agree with the trial court that neither of the instructions was warranted here.

A trial court may refuse proffered instructions when other instructions adequately and accurately state the law, or when the evidence does not warrant the instruction. *Furnary v. Merritt*, 837 P.2d 192 (Colo.App.1991).

Here, the trial court properly instructed the jury on the theories and elements of each of the three tort claims presented. These instructions clarified that the § 1981 claim involved racial discrimination, whereas the § 24–34–402.5 claim protected Gwin's off-the-job privacy. *See Borquez v. Ozer*, 923 P.2d 166 (Colo.App.1995). Accordingly, there was no need further to instruct the jury that the § 24–34–402.5 claim did not involve racial discrimination.

Chesrown also argued that attendance at the seminar was reasonably related to Gwin's employment and that, therefore, he legitimately could be fired. However, contrary to Chesrown's contention, the evidence established that Gwin was not fired for his attendance at the seminar or lack of it, but because he had demanded a refund from the motivational speaker.

Thus, Chesrown did not present competent evidence to justify the affirmative defenses in § 24–34–402.5 of a restriction relating to a bona fide occupational requirement and the trial court properly refused its affirmative defense instruction.

## V.

Gwin contends that since he is the prevailing party, he is entitled to attorney fees necessitated by this appeal. We agree. *See* 42 U.S.C. § 1988 (1993 Supp.); § 24–34–402.5(2)(b), C.R.S. (1995 Cum.Supp.).

The judgment is affirmed and the cause is remanded for assessment of reasonable attorney fees incurred by Gwin relative to this appeal.

TAUBMAN and CASEBOLT, JJ., concur.