**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAUL A. FLINT,

      Plaintiff-Appellant,

v.

AMOCO CORPORATION, an Indiana
corporation,

      Defendant-Appellee.

No. 98-1083
(District of Colorado)
(D.C. No. 97-WY-1411-WD)

**ORDER AND JUDGMENT***

Before **TACHA**, **HENRY,** and **MURPHY**, Circuit Judges.

      Paul Flint, plaintiff, appeals the district court's grant of Amoco

Corporation's Motion for Summary Judgment. He argues that the district court

erred in granting the motion on his claims for breach of an implied employment

contract, breach of an implied covenant of good faith and fair dealing, and breach

of an express covenant of good faith and fair dealing.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRMS**.

I. Background

Flint, a petroleum engineer, had been employed by Amoco Corporation since 1980. In November of 1995, Flint requested an unpaid educational leave of absence from January 13, 1996, through May 10, 1996, so he could attend a semester of classes on a full-time basis. On November 20, 1995, Flint prepared and signed a memorandum requesting the leave which stated: "I understand that there is no guarantee that a position will be available at the time I am ready to return; should a position be available, I would plan to return to work on May 13, 1996." Flint also signed another agreement entitled "Leave of Absence Without Pay - Education," wherein Flint agreed that "this leave is being granted with the understanding that there is no obligation to return me to employment but I will be considered, subject to medical approval by a Company physician, for any available position for which I am qualified." [Hereinafter "Leave Agreement"].

During Flint's leave, Amoco initiated a reassessment of its domestic operations which resulted in a reduction in force ("RIF"). Prior to the expiration of his educational leave of absence in May of 1996, Flint was informed by his supervisor, Ward McNeilly, that due to the RIF there was no longer a position

available in his former group to which he could return. McNeilly encouraged Flint to review the company's job postings and to apply for positions posted internally on Amoco's computerized system ("ASNAP").

Flint's unpaid personal leave of absence was twice extended by Amoco to allow him to continue to apply for positions posted on ASNAP. On May 7, 1996, Flint again signed a memorandum entitled "Leave of Absence Without Pay - Personal Reasons" reiterating his understanding that "there is no obligation to return me to employment . . . "

Flint applied for four of the more than 30 engineering positions posted on ASNAP. As a result of one of these ASNAP applications, he was offered a position located in Houston. Although the ASNAP had clearly stated that the position was located in Houston, Flint told Amoco that he was not willing to relocate. Because Flint was the top candidate and met all of the other criteria for the position, Amoco offered him a modified position which would have allowed him to work for the Houston-based Bravo Dome Group while staying in the Denver office. Amoco offered this modified position on a temporary basis to see if Flint's remote location would work for the group. Flint, however, declined this offer. After the expiration of the second extension of his personal leave of absence, Flint's employment with Amoco was terminated on November 11, 1996.

II. Discussion

A. Implied Contract

Flint argues that in addition to the Leave Agreement's express promise that he would be "considered" for re-employment, Amoco impliedly promised Flint that he would be "*fairly* considered" for re-employment at the conclusion of his leave of absence. Flint relies upon a number of items for this implied promise: Amoco's conduct in regard to other returning employees; Amoco's statements in a brochure that fairness would govern the work environment; and a supervisor's statements to Flint that he could return from leave at any time. Without citing to Colorado state law, Flint states that because the terms of the implied contract are different from the terms of the express contract, the "implied contract exists as a matter of law."

Under Colorado law, a contract cannot be implied if it would cover the same subject matter as an express contract. *See Wilson v. Frederick R. Ross Inv. Co.,* 180 P.2d 226, 231 (Colo. 1947) (en banc) ("The general rule is that there can be no implied contract where there is an express contract between the parties in reference to the same subject matter.") (quotation omitted); *Holland v. Board of County Comm'rs*, 883 P.2d 500, 506 (Colo. Ct. App. 1994) (same).[1]

---

[1] Flint does not argue that the Leave Agreement does not constitute a contract. As noted by the district court, the Leave Agreement signed by Flint was an express contract because there was mutual assent and consideration was

-4-

The Leave Agreement stated that "there is no obligation to return me to employment but I will be considered . . . for any available position for which I am qualified." Flint argues that the implied contract provided that Flint would be "fairly considered" for reemployment after his leave of absence. Flint fails to explain how the alleged implied contract differs from the subject matter of the express contract, and this court can discern no difference between the two. Because Colorado law is clear on this particular issue, Flint's claim fails.

B. Implied Covenant of Good Faith and Fair Dealing

The district court rejected Flint's effort to make a claim for breach of implied covenant of good faith and fair dealing because Colorado has not recognized this cause of action. *See Marsh v. Delta Air Lines, Inc.,* 952 F. Supp. 1458, 1465 (D. Colo. 1997) ("Although the Colorado Supreme Court has not decided the issue, all Colorado Court of Appeals decisions that have decided the issue have determined that there is no cause of action for breach of an implied covenant of good faith and fair dealing." (citing *Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220, 222 (Colo. Ct. App. 1988) (noting that "[a]n implied covenant of good faith and fair dealing found in some commercial contracts does not extend to at will employment contracts."))). Recently the

---

received by both parties.

Colorado Supreme Court declined to express any opinion on whether an implied covenant of good faith and fair dealing is actionable in the employment context, although it noted that the court of appeals had consistently declined to recognize such a cause of action. *See Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 442 & n.5 (Colo. 1997) (en banc) (citing *Farmer v. Central*, 761 P.2d at 221-22; *Montoya v. Local Union III, Int'l Bhd. of Elec. Workers*, 755 P.2d 1221, 1225 (Colo. Ct. App. 1988); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1385 (Colo. Ct. App. 1986)).

This court notes the general rule that if a state-law question is unsettled, a district court must "either predict[] what the state's highest court would decide or certify the question." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 775 (10th Cir. 1999). Although intermediate-court holdings are but one factor in ascertaining how a state's highest court might rule, they may also be persuasive, particularly if there is no contrary authority to suggest that the state's highest court would decide otherwise. *See New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996); *Perlmutter v. United States Gypsum Co.*, 4 F.3d 864, 869 n.2 (10th Cir. 1993). The cases cited by Flint do not suggest that the Colorado Supreme Court would decide the issue differently than the Colorado Court of Appeals. Accordingly, Flint's claim fails.

C.  Express Covenant of Good Faith and Fair Dealing

Finally, Flint argues that Amoco breached an express covenant of good faith and fair dealing created by Amoco's "repeated, express promises of fairness" in an employee manual and a brochure.

As the district court held, the employee manual did not constitute a contract because Flint had not given any consideration sufficient to form a contract. Likewise, the "Strategic Plan" brochure could not serve as a contract because it constituted a general statement of Amoco company policy.  Under Colorado law, a general statement of an employer's policies cannot constitute a promise. *Sonderlun v. Public Serv. Co. of Colo.,* 944 P.2d 616, 620 (Colo. Ct. App. 1997).

## III. Conclusion

After a *de novo* review of the parties' briefs and contentions, the district court order, and the entire record on appeal, this court finds no reversible error and affirms for substantially the same reasons set forth in the district court's Order Granting Motion for Summary Judgment.  The judgment of the United States District Court for the District of Colorado is **AFFIRMED.**

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge