**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LINDA HAYNES,

      Plaintiff-Appellant,

  v.

LEVEL 3 COMMUNICATIONS,
LLC,

      Defendant-Appellee.

No. 05-1218
(D.C. No. 04-N-1642 (MJW),
Consolidated with
D.C. No. 04-N-2425 (MJW))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Linda Haynes appeals from the entry of summary judgment in favor of defendant Level 3 Communications, LLC ("Level 3"). We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

From March 1999 to June 2001, Haynes worked as a sales manager at Level 3's San Francisco office. She alleges that Level 3 discriminated against her because of her age (she was born in 1954) and gender by unfairly criticizing her performance, giving away her sales accounts to younger, male employees, and requiring her to perform additional duties. When she reported this discrimination and complained about other work-related issues, she claims Level 3 retaliated against her, in part by placing her on a performance improvement plan ("PIP"). Sometime after being placed on the PIP, she went on disability leave. While she was on disability leave, Level 3 terminated her employment as part of a reduction in force ("RIF"). One of the criteria Level 3 used to select employees for the RIF was whether they were on a PIP.

In a prior lawsuit, Haynes brought federal claims of age, gender, and disability discrimination as well as a state-law breach of contract claim ("*Haynes I*"). The district court dismissed the federal claims and declined to exercise supplemental jurisdiction over the state-law claim. That case presently is on appeal to this court. *Haynes v. Level 3 Communications, LLC*, No. 04-1307 (10th Cir. filed Aug. 10, 2004).

Shortly after the dismissal of her first lawsuit, Haynes filed another action in the federal district court setting forth three state-law claims for breach of contract and promissory estoppel ("*Haynes II*").  Those claims were based on Level 3's "open door" policy, under which employees could raise workplace issues without fear of retaliation, and on statements that the company was an equal opportunity employer that did not discriminate.  Level 3 moved to dismiss the claims based on a statute of limitations defense.  In the alternative, Level 3 moved for summary judgment on two grounds:  (1) that its open door policy and statements that it did not discriminate were too vague to be enforceable promises; and (2) that Haynes's disability discrimination claim was barred by the doctrine of collateral estoppel because the court in *Haynes I* determined that she was not a qualified individual within the meaning of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213.

After the parties completed briefing on Level 3's motion, Haynes filed a third lawsuit, this time in state court in Colorado ("*Haynes III*").  The complaint in *Haynes III* was essentially the same as the complaint in *Haynes II* but added a fourth claim for relief, that Level 3 breached its promise that an employee could not be laid off while on disability leave.  Level 3 removed *Haynes III* to federal court where it was consolidated with *Haynes II*.  After consolidation, Level 3 filed another motion to dismiss or, in the alternative, for summary judgment in

order to encompass *Haynes III*, and the parties incorporated the briefs they had filed in *Haynes II*.

The district court denied the motion to dismiss. As to the motion for summary judgment, the court assumed Level 3 discriminated and retaliated against Haynes and granted the motion for summary judgment on her first three claims on the ground that the open door policy and the statements that Level 3 did not discriminate were too vague to be enforceable promises under Colorado law.[1] As to her fourth claim, the court stated that, to the extent she "may be contending that [Level 3] discriminated against her on the basis of her disability . . . this claim fails for the same reasons that the other claims fail." App. Vol. IV at 555 n.2. Based on its disposition, the court did not reach the collateral estoppel issue.

On appeal, Haynes argues that dismissal of her first three claims was erroneous because the statements were not vague. She also contends that, because Level 3 never specifically addressed her fourth claim in its motion for summary judgment, the district court erred in considering it. Level 3 argues that the dismissal of Haynes's claims on the merits was proper and that the court's disposition can be affirmed on the alternate ground that her claims are barred by the applicable statute of limitations.

---

[1] The district court accepted the parties presumption that, despite the fact Haynes worked for Level 3 in California, Colorado law governs their dispute.

Ordinarily, "when the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *I.M.A., Inc. v. Rocky Mtn. Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986). However, if "the evidence discloses only a 'vague assurance,' rather than a legally enforceable promise, then the court must determine the issue as a matter of law." *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 621 (Colo. App. 1997) (quoting *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465 (10th Cir. 1994)). Because the district court determined this issue as a matter of law, we review the entry of summary judgment de novo, applying the same legal standard as the district court and viewing the evidence and drawing reasonable inferences from it in the light most favorable to Haynes. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). [2]

Haynes maintains that she was told about the open door policy at her job interview and received a written copy during her orientation. However, a copy of the written policy she claims to have received is not part of the record. The only written copy of the policy is from the company's intranet and bears a revision date of July 2001, after Level 3 terminated her employment. In relevant part, it

---

[2] Because we affirm on the merits, we do not address Level 3's contention that Haynes's suit is barred by the statute of limitations.

provides that "Level 3 maintains an open door policy at all levels of the Company that is designed to resolve work-related problems as quickly, fairly, and informally as possible." App. Vol. I at 174. It also provides that "Level 3 will not tolerate retaliation, or unequal treatment directed at employee-owners who utilize this Open Door Policy to raise workplace problems." *Id.* Additionally, Level 3's director of human resources testified at his deposition that the company has "a policy that you can talk to whomever you need to about whatever issues you may have concerns about" without fear of retaliation. App. Vol. III at 280, 9:23-25. Based on this evidence, the open door policy is fairly summarized as one under which employees could raise concerns about workplace issues without fear of retaliation or discrimination, and Level 3 would not tolerate such conduct against an employee who invoked the policy.

We conclude that the open door policy is too vague to constitute a contract or support a claim of promissory estoppel. Certain requirements are common to both a breach of contract and a promissory estoppel claim:

> [I]n order to constitute an enforceable promise, a statement by [an] employer must meet two requirements. It must disclose a promissory intent or be one that the employee could reasonably conclude constituted a commitment by the employer. If it is merely a description of the employer's present policies, it is neither a promise nor a statement that can reasonably be relied upon. In addition, the employer's statement must be sufficiently definite to allow a court to understand the nature of the obligation undertaken.

-6-

*Hoyt v. Target Stores*, 981 P.2d 188, 194 (Colo. App. 1998). "Assurances of fair treatment or 'mere vague assurances' are unenforceable." *Id.* (quoting *Vasey*, 29 F.3d at 1465).[3]

In *Marsh v. Delta Air Lines, Inc.*, 952 F. Supp. 1458 (D. Colo. 1997), the court considered several statements alleged to form an implied contract, including a statement similar to Level 3's open door policy, "[n]o disciplinary action will be taken against an employee solely for disclosing wrongdoing." *Id.* at 1466 (alteration in original). Applying Colorado law, the court concluded that this statement did "not set forth any employment terms, explain disciplinary procedures, or detail any prohibited conduct. Instead, the statements are best characterized as 'vague assurances' that cannot be the basis for an implied contract." *Id.* at 1466-67.

Similarly, Level 3's open door policy does not contain any employment terms, define retaliation or discrimination, or state what Level 3 will do if retaliation or discrimination occurs. Thus, the open door policy is best described as Level 3's present policy, not an enforceable promise. Its meaning is too vague to evidence an intent to be bound or to be a statement that Haynes could

[3]      Although there are other prerequisites for the formation of an implied contract (such as offer, acceptance, and consideration, *see Vasey*, 29 F.3d at 1464 (applying Colorado law)) or the application of promissory estoppel (such as detrimental reliance, *see id.* at 1466), we need not address them.

reasonably conclude constituted a commitment by Level 3. Additionally, the statement does not define Level 3's obligation precisely enough to permit the court to understand its nature or "to determine whether a contract has been performed." *Vasey*, 29 F.3d at 1465 (quotation omitted).

Level 3's oral statements that it is committed to equal opportunity in employment, which were made at Haynes's orientation and repeated in writing on company bulletin boards, likewise are general policy statements, not enforceable promises. Without some detailed employment terms or a guarantee of employment, equal opportunity statements are not enforceable promises. *Id.* Although Haynes contends that a human resources representative stated that Level 3's equal opportunity policy guaranteed equal treatment, that statement, even if true, is merely a vague assurance, not an enforceable promise.

The remaining issue concerns the district court's disposition of Haynes's fourth claim, that Level 3 terminated her employment while she was on disability leave in violation of statements to the contrary. As noted above, Haynes asserts that the district court erred in considering the fourth claim because Level 3 did not specifically address it in its summary judgment motion. Although Level 3's collateral estoppel argument (which the district court did not consider) arguably reaches the fourth claim, Level 3 never presented a challenge to the legal sufficiency of the promise Haynes alleges Level 3 made to her, that an employee

-8-

could not be laid off while on disability leave. The general rule is that "district courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." *Graham v. City of Oklahoma City*, 859 F.2d 142, 144 (10th Cir. 1988) (per curiam) (quotation omitted). However, "[i]f a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte." *Ward v. Utah*, 398 F.3d 1239, 1245-46 (10th Cir. 2005)

In her response in opposition to Level 3's motion for summary judgment and again in her opening brief on appeal, Haynes relies on the human resource director's deposition testimony that "to lay off an employee because he/she was on disability leave was not permitted by the corporation *because* 'it would be discriminatory.'" App. Vol. II at 192, ¶ 76 (quoting App. Vol. III at 294, 66:5-9) (emphasis added); Aplt. Br. at 13 (quoting App. Vol. III. at 294, 66:5-9) (emphasis added). Level 3 admitted this fact. This is the only evidence in the record related to laying off an employee who is on disability leave. Because Haynes has not indicated that she has any additional evidence on this issue, she has not shown prejudice. Accordingly, the district court did not err in considering the fourth claim.

The evidence Haynes has provided does not describe a promise that Level 3 would not lay off an employee *while* she was on disability leave, as alleged in her

fourth claim, but a statement that an employee could not be laid off *because* she was on disability leave. Thus, Haynes has provided no evidence of the promise she claims was breached. Accordingly, the fourth claim fails. Moreover, the statement that Level 3 is not permitted to lay off an employee *because* she is on disability leave is merely a reiteration of the company's equal opportunity policy. As noted above, without some detailed employment terms or a guarantee of employment, such policies are not enforceable promises. *Vasey*, 29 F.3d at 1465.

The judgment of the district court is **AFFIRMED**.

Entered for the Court

John C. Porfilio
Circuit Judge