2013 COA 91

Charlotte L. RUIZ, Plaintiff–Appellant,

v.

HOPE FOR CHILDREN, INC.,
Defendant–Appellee.

Court of Appeals No. 12CA1556

Colorado Court of Appeals,
Div. II.

Announced June 6, 2013

Michael W. Seckar, P.C., Lawrence D. Saunders, Pueblo, Colorado, for Plaintiff–Appellant.

Gradisar, Trechter, Ripperger & Roth, Douglas A. Gradisar, Pueblo, Colorado, for Defendant–Appellee.

Opinion by JUDGE DUNN

¶ 1 Plaintiff, Charlotte L. Ruiz, was employed as a Family Advocate for defendant, Hope for Children, Inc. She was terminated after she revealed that she was dating Seledonio Rodriguez, whom she met while he was a client at Hope for Children. Ruiz brought a claim for wrongful termination under Colorado's Lawful Activities Statute, section 24–34–402.5, C.R.S.2012. The trial court agreed that Ruiz was terminated for a lawful activity conducted away from work. The court found, however, that the termination was not wrongful. Among other things, it found that, under the statute, an employer may restrict the lawful off-duty activities of its employees if the restriction is necessary to avoid a conflict of interest with any responsibility owed to the employer, or the appearance of such a conflict.

¶ 2 We agree that the evidence was sufficient to conclude that Ruiz's romantic relationship with a current or former client of Hope for Children created, at a minimum, an apparent conflict of interest. We therefore affirm the trial court's judgment in favor of Hope for Children.

## I. Background

¶ 3 Seledonio Rodriguez was ordered by the Pueblo County District Court to attend parenting classes. To comply with the order, he completed a fatherhood program offered by Hope for Children, a small nonprofit organization dedicated to promoting the safety and well-being of children and families by providing clients with educational, counseling, and other social services.

¶ 4 Hope for Children had three employees, including Ruiz, who was the nonprofit's only Family Advocate. Her responsibilities included, among other things, maintaining client files and program certifications, assisting with outside agency referrals, conducting home visits, and liaising with the Department of Human Services and the court system. Because some clients, like Rodriguez, are referred to Hope for Children as the result of a court order, Ruiz was also required, if necessary, to verify a client's participation in a program. To this end, Ruiz was occasionally subpoenaed to testify in court regarding a client's participation in a Hope for Children program.

¶ 5 After Rodriguez completed the court-ordered fatherhood program, he was encouraged to voluntarily enroll in a second parenting skills class offered by Hope for Children. At this point, Ruiz was introduced to Rodriguez. Ruiz was asked to, and did, help Rodriguez enroll in the second parenting skills program. He completed this second class on August 31, 2010. Several days later, Ruiz encountered Rodriguez at the Colorado State Fair. Shortly thereafter, the two began dating.

¶ 6 In October, Ruiz told the executive director of Hope for Children, Leslie Kammeier, that she was going on a lunch date with Rodriguez. Kammeier testified that she informed Ruiz that it was inappropriate for her to date Rodriguez because he was a client of Hope for Children. Kammeier also told Ruiz that if she intended to continue a romantic relationship with Rodriguez, she could not continue to work for Hope for

Children. Kammeier gave Ruiz a weekend to think about her decision. After the weekend, Ruiz informed Kammeier that she did not intend to end her relationship with Rodriguez and would not resign her position. Kammeier then terminated Ruiz's employment.

¶ 7 Ruiz sued Hope for Children for wrongful termination under the Lawful Activities Statute, which, subject to certain enumerated defenses, prohibits terminating an employee for engaging in lawful activity outside of work and during nonworking hours.

¶ 8 After a two-day bench trial, the trial court found that Ruiz was terminated "for engaging in a lawful activity outside of work." The court further found that the romantic relationship between Ruiz and a current or former client of Hope for Children "raise[d] an obvious issue of an actual conflict of interest, as well as the appearance of a conflict of interest." Accordingly, the trial court concluded that Hope for Children's restriction regarding employees dating current or former clients did not violate the statute, and it entered judgment in favor of Hope for Children.

¶ 9 Ruiz appeals the trial court's judgment. She contends, as relevant here, that the trial court applied the conflict of interest defense too broadly, and consequently, that there was insufficient evidence to support the trial court's judgment.

## II. Standard of Review

¶ 10 Statutory interpretation is a question of law, which we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010); *see also Watson v. Pub. Serv. Co.*, 207 P.3d 860, 863 (Colo.App.2008) (interpreting Lawful Activities Statute). When interpreting a statute, our primary duty is to give effect to the intent of the General Assembly. *Hayes v. Ottke*, 2013 CO 1, ¶ 12, 293 P.3d 551, 554. If the statutory provisions are clear and unambiguous, we apply the words' plain and ordinary meanings to determine legislative intent. *CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658, 660 (Colo.2005). We avoid constructions that render any statutory language meaningless. *Well Augmentation*

*Subdist. v. City of Aurora*, 221 P.3d 399, 420 (Colo.2009).

## III. Employment At–Will and the Lawful Activities Statute

■ ¶ 11 Colorado is an employment at-will state, which means that an employer may terminate the employment relationship for any reason or without reason, and without legal liability. *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997). The exceptions to an employer's general right to terminate an employee, however, are considerable. *See id.* (identifying certain statutory and judicially created exceptions to employment at-will); *see also Wisehart v. Meganck*, 66 P.3d 124, 131–32 (Colo.App.2002) (Webb, J., dissenting) ("The [employment at-will] doctrine is so riddled with exceptions that it will rarely be the case that the termination of a particular employee does not fall within one of the exceptions." (emphasis omitted) (quoting *Practitioner's Guide to Colorado Employment Law* 2–2 (Supp. 2001))).

¶ 12 The Lawful Activities Statute is one such statutory exception. However, though its protective scope is broad, the statute still allows an employer to restrict its employees' lawful off-duty activities in two respects. Specifically, the statute provides:

(1) It shall be a discriminatory or unfair employment practice for an employer to terminate the employment of any employee due to that employee's engaging in any lawful activity off the premises of the employer during nonworking hours unless such a restriction:

(a) Relates to a bona fide occupational requirement or is reasonably and rationally related to the employment activities and responsibilities of a particular employee or a particular group of employees, rather than to all employees of the employer; or

(b) Is necessary to avoid a conflict of interest with any responsibilities to the employer or the appearance of such a conflict of interest.

§ 24–34–402.5(1)(a)–(b), C.R.S.2012. The statute thus reflects a legislative attempt to balance an employee's right to engage in

lawful activity away from work with an employer's legitimate business interests and needs. To that end, the statute "promotes a 'hands-off' policy for a broad range of off-the-job employee behavior," but, by carving out exceptions that allow employers to terminate employees for lawful off-the-job activity, also maintains "the larger balance between employer and employee rights reflected in Colorado's law of at-will employment." *Coats v. Dish Network, L.L.C.,* 2013 COA 62, ¶ 16, 303 P.3d 147, 151; *see* § 24–34–402.5(1)(a)–(b); *see also Wisehart,* 66 P.3d at 126 (Colorado is an "at-will" employment state and allows either the employee or the employer to terminate employment at any time without cause; this balance "promotes flexibility and discretion for employees to seek the best position to suit their talents and for employers to seek the best employees to suit their needs").

## IV. The Conflict of Interest Defense

■ ¶ 13 Ruiz asserts that Hope for Children could not rely on the "conflict of interest" defense because there is no record evidence that Ruiz was "profiting at the expense of [Hope for Children] by dating Rodriguez." We do not agree that the conflict of interest defense in the Lawful Activities Statute is limited to financial conflicts of interest.

¶ 14 Nothing in the plain language of section 24–34–402.5(1)(b) limits actual or apparent conflicts of interest for which an employee may be terminated to financial conflicts of interest. Had the legislature intended to limit the defense to financial conflicts, it would have done so. *In re Marriage of Hartley,* 886 P.2d 665, 673 (Colo.1994) (if the legislature intended statute to include a certain provision, it would have included it in the statute); *Adams v. Corr. Corp.,* 187 P.3d 1190, 1193 (Colo.App.2008) ("[I]t is presumed that the General Assembly meant what it clearly said."). Indeed, a review of Colorado statutes reveals that where the legislature intended to limit the meaning of an actual or apparent conflict of interest to those situations involving financial gain, it did so. *See, e.g.,* § 18–8–308(2), C.R.S.2012 (limiting "potential conflicting interest" to situations in

which a public servant, among other things, owns or controls a substantial interest in any nongovernmental entity participating in a pecuniary transaction with which the public servant is connected); § 24–35–209(1)(a), C.R.S.2012 (specifying that it is a conflict of interest for a member of the state lottery division to have "any personal pecuniary interest in any lottery or in the sale of any lottery tickets"). Because the legislature chose not to limit conflicts of interest in the Lawful Activities Statute to financial conflicts, we will not judicially engraft such a limit. *See People v. Jaramillo,* 183 P.3d 665, 671 (Colo.App.2008) (courts must respect the General Assembly's choice of language, and cannot add words to or subtract them from a statute); *see also Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate.").

¶ 15 Nor are we persuaded by Ruiz's reliance on *Marsh v. Delta Air Lines, Inc.,* 952 F.Supp. 1458 (D.Colo.1997). *Marsh* involved the firing of a Delta Air Lines baggage handler after he wrote a letter to the Denver Post criticizing his employer. 952 F.Supp. at 1460. The *Marsh* court noted that Delta was not justified in terminating the employee under the conflict of interest defense in the Lawful Activities Statute. *Id.* at 1464.[1] In so concluding, that court found, with little analysis, that the employee "was not disregarding his duties in favor of personal gain by writing the Post," and that, therefore, "under the generally understood meaning of the term, [the employee] did not have any conflict of interest when writing to the Post." *Id.* To the extent *Marsh* can be read for the proposition that the conflict of interest defense is limited to financial conflicts of interest, we do not agree that such an interpretation is consistent with the plain language of the statute. Further, we are not bound by a federal district court's interpretation of Colorado law. *See People v. Barber,* 799 P.2d 936, 940 (Colo.1990); *see also Watson,* 207

---

1. The *Marsh* court found Delta's termination of the baggage handler was justified under the bona fide occupational requirement defense. *Id.* at 1463. Thus, the discussion regarding the conflicts of interest defense is arguably dictum.

P.3d at 865 ("No Colorado appellate opinion has approved the *Marsh* court's analysis.").

¶ 16 Similarly, we do not read *Marsh* as establishing the alternative requirement, suggested by Ruiz, that Hope for Children needed to prove that dating Rodriguez actually interfered with Ruiz's ability to perform a job-related duty. Again, the plain language of section 24–34–402.5(1)(b) does not contain any requirement that a conflict of interest actually interfere with an employee's ability to perform her job. To the contrary, the conflict of interest defense expressly contemplates that an employer may restrict an employee's lawful, off-the-job activities not only where an actual conflict of interest exists, but also where there is an appearance of such a conflict. § 24–34–402.5(1)(b). Were we to adopt Ruiz's construction, and read the statute to require an employer to establish that a conflict actually interferes with an employee's job, it would render the phrase "the appearance of such a conflict of interest" meaningless. This we will not do. *See Well Augmentation Subdistrict*, 221 P.3d at 420 (court will not construe a statute in a manner that renders statutory language meaningless).

¶ 17 Finally, to the extent that Ruiz argues that Hope for Children was required to consider a less drastic alternative to termination, the plain language of the statute does not require the employer to do so. We will not impose requirements where the legislature did not. *Turbyne v. People*, 151 P.3d 563, 567 (Colo.2007) ("We do not add words to [a] statute or subtract words from it.").

¶ 18 Accordingly, we conclude that the trial court did not err in declining to adopt Ruiz's narrow interpretation of the conflict of interest defense.

## V. Sufficiency of the Evidence to Establish a Conflict of Interest or the Appearance of a Conflict of Interest

■ ¶ 19 Having rejected Ruiz's invitation to limit the conflict of interest defense to financial or actual conflicts, we next consider whether the evidence supports the trial court's order in favor of Hope for Children. We conclude that there was sufficient evidence to support the trial court's conclusion that Ruiz's romantic relationship with a client, or former client, of Hope for Children created, at a minimum, the appearance of a conflict of interest. Thus, we decline to disturb the trial court's determination that Hope for Children did not wrongfully terminate Ruiz.

### A. Standard of Review

¶ 20 When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the verdict. *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1106 (Colo.App.2004). In conducting our review, we draw every reasonable inference from the evidence in favor of the prevailing party. *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1201 (Colo.App.2009).

### B. Analysis

■ ¶ 21 The Lawful Activities Statute does not define "conflict of interest" or the "appearance" of such a conflict. And given that the existence of a conflict, or the appearance of a conflict, is almost entirely dependent on context, determinations grounded on this legal basis must turn on the facts and circumstances of a particular case. This determination, then, is both context and industry specific. *See City of Manassa v. Ruff*, 235 P.3d 1051, 1055 (Colo. 2010) (term "conflict of interest" reflects various policy determinations, depending on the context in which it operates); *Schupper v. People*, 157 P.3d 516, 520 (Colo.2007) (whether a relationship creates the appearance of a conflict of interest is a factual question that must be made on a case-by-case basis). The existence of a conflict, or the appearance of a conflict, is uniquely within the province of the fact finder. *Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1144 (Colo.App.2008) ("Whether a conflict of interest exists is a question of fact."); *see also People v. Cnty. Court*, 854 P.2d 1341 (Colo.App.1992) (whether an appearance of impropriety exists is committed to the trial court's discretion, and turns on the circumstances of each particular case).

¶ 22 The trial court concluded that the fact that Ruiz "may be required to testify in court regarding whether or not a client or former client ... completed treatment" raised, at a minimum, the appearance of a conflict of interest with Ruiz's job responsibilities. The court also concluded that the romantic relationship between Ruiz and Rodriguez created the appearance of a conflict of interest to third-party organizations from which Hope for Children received its funding, client referrals, and contracts. Specifically, the court found that the dating relationship had the potential to damage "the image and reputation of [Hope for Children]" by causing third parties to lose confidence in the reliability and professionalism of the organization, and that, in turn, could "endanger the grants that fund" Hope for Children.

¶ 23 Viewed as a whole and in the light most favorable to Hope for Children, the evidence is sufficient to support the trial court's conclusions that Ruiz's relationship with Rodriguez created an appearance of a conflict of interest with her job responsibilities. *See Webster's Third New International Dictionary* 103 (2002) ("appearance" means the "outward show or image presented by a person or thing"); *cf. People v. Schupper*, 124 P.3d 856, 858 (Colo.App.2005) (in judicial disqualification context, test for "appearance" of partiality is whether a reasonable person, knowing all the relevant facts, would harbor doubts about a judge's impartiality), *aff'd*, 157 P.3d 516. In particular, the evidence established the following:

- One of Ruiz's job responsibilities at Hope for Children was testifying concerning the completion of court-ordered treatment by clients or former clients;
- Rodriguez was court-ordered to attend a fatherhood class and did so through Hope for Children;
- Ruiz and Rodriguez met while he was receiving services at Hope for Children, and Ruiz was expressly asked to assist Rodriguez in enrolling in a parenting skills class;
- Because Rodriguez was court-ordered to attend a fatherhood class, if an issue arose regarding his compliance with the order, Ruiz, as the only Family Advocate, would have been required to verify (and potentially testify about) his participation and completion of the program;
- Although Ruiz testified that she viewed Rodriguez as a former client of Hope for Children when she began dating him, Kammeier testified that Hope for Children does not "close" its files and has worked with some families intermittently for up to eight years, and that clients might "be gone for a few months and then they're back";
- Similarly, the Executive Director of the Tenth Judicial District's Court Appointed Special Advocates (CASA) testified that, in the social services field, many people express the view that "once a client, always a client";
- Kammeier further testified that 85 to 87% of Hope for Children's budget comes from a federal grant to the Colorado Department of Human Services (CDHS). And she testified that, because Hope for Children receives many of its client referrals as a result of contracts with CDHS and Community Corrections, a policy permitting employees to date clients would negatively impact Hope for Children's relationship and reputation with those organizations, resulting in a loss of clients and funding;
- The former director of Social Services for Pueblo County, and a board member of Hope for Children, testified that a dating relationship between a social services organization employee and client or former client creates a conflict of interest in the form of an appearance of impropriety, "where the credibility of the agency to provide proper services" is negatively impacted;
- And the executive director of CASA testified that a social services organization's funding might be subject to revocation if it allowed its employees to date clients.

¶ 24 Given this testimony and the nature of the social services field, we conclude that the evidence was sufficient to support the trial court's conclusion that the restriction on the dating relationship between Ruiz and Rodriguez was necessary to avoid, at a minimum, the appearance of a conflict of interest with

Ruiz's responsibilities to her employer. *See* Restatement (Second) of Agency § 380 cmt. a (1958) ("The nature of the business and the position of the agent determine ... what conduct can be expected from [the agent].").

¶ 25 Because we conclude that the court did not err in determining that Hope for Children met its burden under section 24–34–402.5(1)(b), we need not address the remaining statutory defenses relied upon by the trial court. *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo.App.2004) ("[W]e may affirm the trial court's ruling based on any grounds that are supported by the record. ").[2]

### VI.   Attorney Fees

 ¶ 26 Hope for Children requests an awarded of its appellate attorney fees. Specifically, it argues that, "in light of the lack of evidence justifying [Ruiz's] position throughout trial and throughout this appeal, [Ruiz's] position has been groundless and frivolous." We disagree.

¶ 27 A court shall award attorney fees if an attorney or a party brings or defends an action that lacks substantial justification. A claim lacks substantial justification if it is substantially frivolous or groundless. § 13–17–102(4), C.R.S.2012; *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 618 (Colo.2005). An appeal is substantially frivolous when the appellant's briefs fail to set forth a coherent assertion of error, supported by legal authority. *Castillo v. Koppes–Conway*, 148 P.3d 289, 292 (Colo.App. 2006).

¶ 28 The trial court expressly found that Ruiz stated a prima facie case that she was wrongfully terminated for engaging in a lawful activity outside of work. And, prior to this opinion, there were no Colorado appellate opinions interpreting the statutory defenses in the Lawful Activities Statute. While we do not agree with Ruiz's interpretation of the conflict of interest defense, we find nothing in her arguments to be ground-

less or frivolous. We therefore decline to award the requested fees.

### VII.   Conclusion

¶ 29 The judgment of the trial court is affirmed.

JUDGE CASEBOLT and JUDGE LICHTENSTEIN concur.

---

**2.** The trial court concluded that Ruiz's termination was also justified under the other defenses found in the statute.