Opinion by JUDGE CASEBOLT
¶ 1 In this personal injury action involving a motor vehicle collision, plaintiff, David Vititoe, appeals the judgment in favor of defendant, Rocky Mountain Pavement Maintenance, Inc., now known as Polk Holdings Company, Inc. Plaintiff asserts that reversal is required because some of the prospective jurors made prejudicial statements during voir dire, and that the trial court erred when it declined to canvass the jury, issue a limiting instruction, or declare a mistrial. He also contends that the jury's verdict is not supported by the evidence and that the court erred by both giving and failing to give certain jury instructions.
¶ 2 We conclude that the prospective jurors' statements were not prejudicial and therefore did not require any corrective action from the trial court. We also conclude that the jury's verdict is supported by the evidence and that the court did not erroneously instruct the jury. Accordingly, we affirm.
I. Factual Background and Procedural History
¶ 3 Plaintiff was riding his motorcycle eastbound on Colfax Avenue in Denver late one night when he made a U-turn. Shortly after he began to proceed westbound, his motorcycle collided with the rear portion of a lowboy trailer that was connected to a tractor being driven by Larry Horton, defendant's employee. The collision occurred in the left, westbound lane as Horton was either stopped at, or beginning to proceed through, the intersection of Colfax and Logan Street. The intersection was controlled by a traffic signal, which had turned green. Although the parties do not dispute these basic facts, the events that led to the collision are contested.
¶ 4 Plaintiff presented several theories of negligence at trial. He alleged that the collision occurred because of defendant's negligent *773 failure to abide by certain regulations that apply to truck drivers and their rigs. This theory centered on the amount of time Horton had remained stopped at the intersection.
¶ 5 Plaintiff's expert witness Brooks Rugemer, an expert in truck driver operations and truck driver negligence, testified that defendant had violated regulations that limit truck drivers to a fourteen-hour work day by allowing Horton to work for approximately seventeen-and-one-half hours without requisite rest, and opined that Horton was likely very tired and inattentive at the time of the collision. Eyewitnesses testified that Horton had remained stopped at the intersection after the traffic signal had turned green. Based on this testimony, plaintiff asserted that the collision occurred because Horton had failed to obey the traffic signal and was stopped at the intersection for an unreasonable time due to fatigue.
¶ 6 Plaintiff also asserted that the collision occurred because Horton's truck was not visible at the time of the collision. Plaintiff's witness Tom Feiereisen, who testified as an expert in accident reconstruction, opined that the taillights on the trailer did not comply with Colorado law because they were positioned too low. In addition, an eyewitness testified that she had watched as plaintiff followed another vehicle westbound before that vehicle swerved suddenly to another lane and saw plaintiff collide with an "invisible" object in the street. Based on this testimony, plaintiff contended that the collision occurred because he had not been able to see the tractor-trailer.
¶ 7 Defendant contended that the collision occurred solely because plaintiff had acted negligently. Horton testified that he was not fatigued at the time of the collision. He stated that plaintiff had collided with his trailer just after the traffic signal turned green and while he was in the process of shifting gears to proceed through the intersection. He also testified that the trailer taillights were on at the time of the collision. Some of the eyewitnesses testified that the tractor-trailer was plainly visible from their perspectives. And a police detective testified that plaintiff had told him that he saw the tractor-trailer and accelerated towards it because he thought the rig was proceeding through the intersection.
¶ 8 The jury returned a special verdict form finding that defendant was negligent, but that defendant's negligence was not a cause of plaintiff's injuries. Accordingly, the court entered judgment for defendant.
II. Jurors' Statements During Voir Dire
¶ 9 Plaintiff contends that some of the prospective jurors made prejudicial statements concerning motorcyclists' helmet use during voir dire. He asserts the trial court erred when it refused to canvass the jurors on that topic, give a limiting instruction, or declare a mistrial. We disagree.
A. Background
¶ 10 During voir dire, Juror H asked plaintiff's counsel whether they could discuss motorcyclists' helmet use. Plaintiff's counsel responded by informing Juror H that the law in Colorado did not allow the jury to consider a motorcyclist's helmet use. Later, plaintiff's counsel asked the jurors whether they could disregard any evidence about plaintiff's use of, or failure to use, a helmet in this case.
¶ 11 In response, Juror B stated that, as a former motorcyclist, she would hold plaintiff to a higher standard of care because a motorcycle lacks protective metal to shield a rider from a collision. Juror H also stated that that she would not follow the law regarding the jury's consideration of helmet use.
¶ 12 The trial court told the jury, "We're not supposed to consider [helmet use] for who's at fault or for any of it, including the financial compensation for what happens." Immediately thereafter, plaintiff's counsel told the panel that because Colorado does not have a mandatory helmet law, evidence regarding helmet use is "not relevant" and is not to be considered. Plaintiff's counsel then requested other prospective jurors to share their views:
.... Anybody else that, you know, and this is a wonderful opportunity because there may be other cases that are in need of your services right now. If this type of case violates a right to feel comfortable in *774 following the law and not violating your ethical principles....
¶ 13 Responding to counsel's invitation, Juror K stated that he owned a scooter and that, although he "like[d] the fact that there's a no helmet law in Colorado," felt as though he was held to a higher "burden" when he rode it. Nevertheless, Juror K stated that he would try to listen to the evidence and determine the case fairly.
¶ 14 Juror F stated that he would have a "tough time" balancing the law against his notions of common sense, but acknowledged that a driver of any vehicle must exercise the same type of common sense.
¶ 15 Citing the prospective jurors' statements about helmet use, plaintiff's counsel asked the court to canvass the panel and, if the court determined that other jurors were biased, to declare a mistrial. The trial court declined to do so. It reasoned that plaintiff's counsel had elected to voir dire the panel as he did and chose not to limit his questioning to whether the prospective jurors could perform their duties without knowledge of plaintiff's helmet use. It also reasoned that the jury was not going to hear any evidence regarding plaintiff's helmet use and therefore the statements would not affect the jury. The court refused to issue a limiting instruction because plaintiff's counsel had stated the law and that characterization stood unchallenged.
¶ 16 After some of the prospective jurors were excused for hardship, Juror M stated that, based on her prior experiences with collisions involving motorcycles, she would be unable to follow the law regarding evidence of helmet use, and that motorcyclists are held to a higher standard of care.
¶ 17 While defense counsel was questioning the prospective jurors, he told the jurors that they could draw any conclusions they wished, but they would not hear any evidence regarding helmet use.
B. Preservation and Standard of Review
¶ 18 This issue is preserved. We review the trial court's decision to deny each of plaintiff's requests for an abuse of discretion. See Kinney v. People, 187 P.3d 548, 558 (Colo.2008) ("[W]e review for an abuse of discretion the trial court's order denying [the defendant] a limiting instruction."); People v. Wilson, 2013 COA 75, ¶ 11, 318 P.3d 538 ("We review a trial court's decision to limit voir dire for an abuse of discretion."); Wark v. McClellan, 68 P.3d 574, 578 (Colo.App.2003) (A mistrial "is a drastic remedy, and we will not disturb the trial court's decision absent a gross abuse of discretion and prejudice to the moving party."). A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. Banning v. Prester, 2012 COA 215, ¶ 30, 317 P.3d 1284.
C. Law
¶ 19 "[U]nder the law of comparative negligence in Colorado, evidence of a plaintiff's failure to wear a protective helmet is inadmissible to show negligence on the part of the plaintiff or to mitigate damages." Dare v. Sobule, 674 P.2d 960, 962 (Colo.1984). If the jury learns that a motorcyclist was not wearing a helmet, a limiting instruction may be required. See id .
¶ 20 "The purpose of voir dire is to determine whether any potential juror has beliefs that would interfere with a party's right to receive a fair and impartial trial." Black v. Waterman, 83 P.3d 1130, 1136 (Colo.App.2003). When a prospective juror makes a potentially prejudicial statement during voir dire, the trial court may issue a curative instruction; canvass the jury; or declare a mistrial. People v. Mersman, 148 P.3d 199, 203-04 (Colo.App.2006).
¶ 21 In Mersman, the defendant was charged with several offenses related to his operation of a vehicle while under the influence of alcohol. Id . at 201. After one of the prospective jurors stated that she knew the defendant's only witness " 'through the drug scene,' " the trial court denied the defendant's request for a mistrial. Id . at 203.
¶ 22 On appeal, a division of this court determined that the juror's statements "may, in fact, have been prejudicial." Id . However, the division concluded that the trial court had not plainly erred by failing to canvass the jury or issue a limiting instruction because *775 the defendant had not asked the court to do so. Id . at 204. Because of that failure, the division concluded that the trial court had not abused its discretion in denying the request for a mistrial, which is "warranted only where the prejudice to the accused is too substantial to be remedied by other means." See id . at 203. The division also reasoned that the prospective juror's statement concerned a witness, not the defendant, and was therefore less prejudicial than the statements in cases from other jurisdictions that had required a mistrial. Id . at 205 (collecting cases).
D. Application
¶ 23 Relying on Mersman, plaintiff contends that the trial court erred by failing to give a limiting instruction, canvass the jury, or declare a mistrial in response to the potential jurors' statements about helmet use. We disagree.
¶ 24 There may be situations in which a prospective juror makes a statement that demands corrective action by the trial court. See id . at 203-04. However, such action is necessary only where the statement is potentially prejudicial. See id . at 203 ; cf. People v. Brewer, 720 P.2d 583, 588 (Colo.App.1985) (trial court did not abuse its discretion in permitting the prosecutor to ask certain questions during voir dire that did not prejudice the defendant). A trial court need not take corrective action when a prospective juror's statements are not potentially prejudicial, but merely reveal his or her potential biases. See United States v. Guzman, 450 F.3d 627, 631-33 (6th Cir.2006) (The jury pool is not contaminated where "jurors announce their potential biases.... One of the primary purposes of voir dire is to aid counsel in their exercise of peremptory challenges" and "[v]oir dire in front of the entire jury pool may actually result in more effective screening" because "[p]otential jurors are often emboldened to be more candid after witnessing other potential jurors' voir dire."); cf. Black, 83 P.3d at 1136 ("The purpose of voir dire is to determine whether any potential juror has beliefs that would interfere with a party's right to receive a fair and impartial trial.").
¶ 25 In Mersman, the prospective juror's statement implied that she knew the defendant's only witness had been involved in either using or dealing drugs. See 148 P.3d at 203. As the division recognized, the prospective juror's statement was potentially prejudicial because it exposed the other members of the panel to information about the anticipated witness. See id . at 203, 205. And, as the division determined, such a statement may require corrective action. See id . at 203-05 ; cf. Mach v. Stewart, 137 F.3d 630, 633 (9th Cir.1997) (Trial court was required to canvass the jury where prospective juror stated during voir dire that she had never known a child to lie about sexual abuse during three years of employment as a social worker).
¶ 26 Whether a statement made by a prospective juror is potentially prejudicial depends significantly on the facts and circumstances. See, e.g., United States v. Buchanan, 787 F.2d 477, 480 (10th Cir.1986) (The defendant was not irreparably prejudiced by a prospective juror's remark where the remark "did not constitute an opinion on the defendant's guilt or the veracity of anyone involved in the case."); United States v. Tegzes, 715 F.2d 505, 508 (11th Cir.1983) (same).
¶ 27 In Tegzes, the defendant was charged with two offenses concerning the possession of cocaine. 715 F.2d at 506. After one of the prospective jurors said that she had seen her youngest son overdose on "dope" when he was eighteen years old, the trial court refused to canvass the jury, issue a limiting instruction, or declare a mistrial. Id . On appeal, the Eleventh Circuit determined that the prospective juror's statement did "not raise the spectre of potential prejudice." Id . at 508. The court reasoned that the statement "did not constitute an opinion concerning the guilt or innocence of the defendants, nor did it relate to knowledge about the facts, parties, or witnesses involved in th[e] case." Id . And "[t]he fact that other jurors may now know that criminal conduct [inferentially, an overdose of drugs] leads to tragic results does not constitute 'potential actual prejudice' toward the accused." Id .
*776 ¶ 28 The statements made by the prospective jurors and defense counsel in this case are analogous to those made in Tegzes . None of the statements revealed information about the parties, witnesses, or evidence that was to be introduced at trial. See id . at 508. That jurors may have become aware that some people believe motorcyclists must exercise a higher standard of care and should wear helmets, and that there are potential consequences from their failure to do either, did not prejudice plaintiff's case. See id . Furthermore, none of the jurors expressed an opinion that plaintiff was negligent for failing to wear a helmet. See id . Nor, as the trial court reasoned, could the prospective jurors have formed such an opinion because evidence regarding plaintiff's helmet use was inadmissible. See id . ; Dare, 674 P.2d at 962.
¶ 29 Furthermore, the jury heard no direct evidence that plaintiff was not wearing a helmet. While a bartender at a local establishment, who knew plaintiff, testified that plaintiff was not carrying a helmet with him when the bartender saw him the evening of the collision, such evidence was introduced by plaintiff's counsel. Hence, any error inhering in such testimony was invited, and thus is not reversible. See People v. Wittrein, 221 P.3d 1076, 1082 (Colo.2009).
¶ 30 Moreover, during voir dire, the trial court informed the panel that it could not consider a motorcyclist's use of, or failure to use, a helmet to determine liability or damages. And, at the close of the evidence, the trial court instructed the jury that it must "consider only the evidence received at trial[,]" which consisted of the sworn testimony, the exhibits that had been admitted, stipulations, and presumptions. "Absent evidence to the contrary, we presume that a jury follows a trial court's instructions." Qwest Servs. Corp. v. Blood, 252 P.3d 1071, 1088 (Colo.2011).
¶ 31 There is no such contrary evidence in this case. The trial court dismissed Juror M, Juror H, and Juror B-the jurors who had said they would not follow the law-for cause. None of the jurors who ultimately served expressed a similar sentiment when they were questioned during voir dire. As a result, plaintiff's contention relies solely "on speculation as to the effect, if any, the potential jurors' statements had on the actual jurors." Guzman, 450 F.3d at 632 ; see also United States v. Jones, 696 F.2d 479, 491-92 (7th Cir.1982) (the defendants were tried by an impartial jury where two prospective jurors made improper comments, the entire panel heard those comments, but the two prospective jurors were dismissed).
¶ 32 For these reasons, we conclude that the trial court's refusal to canvass the jury, give a limiting instruction, or declare a mistrial was not arbitrary, unreasonable, or unfair. Accordingly, the court did not abuse its discretion.
III. Evidentiary Support for the Jury's Verdict
¶ 33 Plaintiff asserts that the judgment must be reversed because the evidence admitted at trial does not support the jury's verdict. He contends that the jury could not have reasonably found-as it did-that defendant had acted negligently, but that such negligence was not a cause of his injuries. We disagree.
A. Preservation and Standard of Review
¶ 34 This issue is preserved. When a jury verdict is challenged on the grounds that it is unsupported by the evidence, we must review the entire record to determine whether there is competent evidence from which the jury logically could have reached its verdict. Hock v. N.Y. Life Ins. Co., 876 P.2d 1242, 1259 (Colo.1994) ; Rodriguez v. Morgan Cnty. R.E.A., Inc., 878 P.2d 77, 82 (Colo.App.1994).
¶ 35 "An appellate court has a duty to attempt to reconcile the jury's answers to special verdicts if it is at all possible." City of Aurora v. Loveless, 639 P.2d 1061, 1063 (Colo.1981). "Where there is a view of the case that makes the jury's answers ... consistent, they must be resolved that way." Id . (internal quotation marks omitted).
¶ 36 "[W]e must determine whether the evidence, viewed as a whole and in the *777 light most favorable to the prevailing party, is sufficient to support the verdict." Ruiz v. Hope for Children, Inc., 2013 COA 91, ¶ 20, 352 P.3d 983. "In conducting our review, we draw every reasonable inference from the evidence in favor of the prevailing party." Id . Issues of negligence and causation in fact are questions of fact to be determined by the jury, and we will not overturn its decision on those questions where there is competent evidence from which the jury could have logically reached its verdict. Loveless, 639 P.2d at 1063 ; Morales v. Golston, 141 P.3d 901, 906 (Colo.App.2005).
B. Law
¶ 37 "In Colorado a finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury." Loveless, 639 P.2d at 1063.
¶ 38 "Proximate cause has two aspects: causation in fact and legal causation." Reigel v. SavaSeniorCare L.L.C., 292 P.3d 977, 985 (Colo.App.2011). Plaintiff's contentions do not concern legal causation, and we therefore do not address it. Cf. Moore v. W. Forge Corp., 192 P.3d 427, 436 (Colo.App.2007) (Legal causation refers to "rules of law limiting the liability of a negligent actor" as a matter of "policy" that are analytically distinct from "the fact of causation." (internal quotation marks omitted)).
¶ 39 To establish causation in fact, " 'a plaintiff must show either that (1) but for the defendant's alleged negligence, the claimed injury would not have occurred, or (2) the defendant's alleged negligence was a necessary component of a causal set that would have caused the injury.' " Reigel, 292 P.3d at 987 (quoting June v. Union Carbide Corp., 577 F.3d 1234, 1245 (10th Cir.2009) ); see also N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct, 914 P.2d 902, 908 (Colo.1996) ("The test for causation is the 'but for' test-whether, but for the alleged negligence, the harm would not have occurred."); Graven v. Vail Assocs., Inc., 909 P.2d 514, 520 (Colo.1995) ( "Where an injury results from the combined negligence of the defendant and other factors, the injury is attributable to the defendant if the injury would not have occurred in the absence of the defendant's negligence."), superseded by statute as stated in Fleury v. IntraWest Winter Park Operations Corp., 2014 COA 13, 411 P.3d 81.
¶ 40 The former, or "but-for" test, is "satisfied if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[d] the result complained of, and without which the result would not have occurred.' " Reigel, 292 P.3d at 985 (quoting N. Colo. Med. Ctr., 914 P.2d at 908 ).
¶ 41 The latter test may be used where causes other than the defendant's negligence "may be at play." Id. at 987. It may be met if the plaintiff can show that the defendant's negligence was a "substantial contributing cause" or a "substantial factor" in causing the damages. Rupert v. Clayton Brokerage Co., 737 P.2d 1106, 1112 (Colo.1987) ; Ekberg v. Greene, 196 Colo. 494, 497, 588 P.2d 375, 377 (1978). However, a plaintiff relying on this latter test must demonstrate that "the defendant's conduct [was] a cause without which the injury would not have occurred." Reigel, 292 P.3d at 987 ; see also Graven, 909 P.2d at 520 (Where a plaintiff's injury resulted from multiple factors, "the injury is attributable to the defendant if the injury would not have occurred in the absence of the defendant's negligence.").
C. Application
¶ 42 Plaintiff contends that defendant's negligence must have been a cause of his injuries because the parties stipulated that the collision had caused those injuries and the evidence presented only two possible causes of the collision: plaintiff's negligence or defendant's negligence. We are not persuaded.
¶ 43 At the outset, we reject plaintiff's contention that the stipulation regarding his damages defeats the jury's verdict on its own. The parties stipulated that plaintiff had "injuries and losses from the collision and has incurred medical bills totaling $447,126.16." (Emphasis added.) While this stipulation establishes that the collision *778 caused plaintiff's injuries, it does not establish that defendant's negligence caused the collision. Thus, it does not invalidate the jury's verdict.
¶ 44 In asserting that defendant's negligence was a cause of the collision, plaintiff relies exclusively on one of the negligence theories he presented at trial. That theory posited that defendant was negligent for failing to abide by regulations that limit truck drivers to a fourteen-hour work day. He contends that the collision would not have occurred but for defendant's negligent failure to follow those regulations because, if defendant had done so, the vehicle that Horton was driving would not have been present on the road.
¶ 45 However, plaintiff's argument is belied by Rugemer's testimony. On direct examination, Rugemer explained that regulations limit the number of hours a truck driver may work and that they exist to prevent fatigue. He opined that Horton was driving in violation of those regulations and was likely very tired at the time of the collision. However, on cross-examination, Rugemer conceded that none of the people who had observed Horton at the scene of the collision had noted or reported that he appeared tired or fatigued. Rugemer also stated that he had no opinion as to whether the regulatory violation was a cause of the collision.
¶ 46 "The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the fact finder, whose decision will not be disturbed on review unless manifestly erroneous." Vaccaro v. Am. Family Ins. Grp., 2012 COA 9, ¶ 34, 275 P.3d 750. Based on Rugemer's testimony, the jury could have concluded that defendant was negligent for violating the regulations, but also could have concluded that the violation itself was not a cause of the collision because Horton was not fatigued at the time of the collision, or that any fatigue did not cause the collision. Indeed, Horton testified that he was not tired at the time of the collision. Thus, the evidence supports the jury's verdict.
¶ 47 Moreover, the jury could have rejected Rugemer's testimony entirely. See id . Plaintiff presented several theories regarding defendant's negligence and we will not assume that the jury relied exclusively on one such theory. See City of Fountain v. Gast, 904 P.2d 478, 483 (Colo.1995) (reversing court of appeals' decision that assumed the jury exclusively relied on one theory of negligence where the plaintiff presented multiple theories and the jury "could have adopted any one of [those] theories").
¶ 48 Plaintiff alleged that Horton had negligently failed to activate the taillights on his trailer. An eyewitness testified that she saw plaintiff following another vehicle before the collision, and that she watched that other vehicle suddenly swerve to a different lane of traffic before plaintiff's motorcycle collided with an "invisible" object in the street. After the eyewitness testified, however, Feiereisen opined that, based on average reaction times and braking speeds, there was a "high probability" that the collision would have occurred even if Horton's taillights were on. This was so, Feieresian explained, because plaintiff "was ... in the dead zone by the time the [other vehicle's movement] allowed him to see the back of the trailer."
¶ 49 Based on the testimony from these two witnesses, the jury could have found that Horton was negligent for failing to activate his taillights. But the jury could have also logically determined that Horton's negligence was not a cause of the collision because plaintiff's motorcycle would have collided with the rear of the trailer regardless. Cf. Morales, 141 P.3d at 906 (the jury could have logically determined that the defendant's negligence (speeding) was not the "but for" cause of the mother's death because the evidence permitted the jury to conclude that the mother would have been killed in the collision even if the defendant had not been speeding).
¶ 50 Hence, there "is a view of the case that makes the jury's answers ... consistent." Loveless, 639 P.2d at 1063 (internal quotation marks omitted). And because that view of the case is supported by competent evidence, we must uphold the jury's determination.
*779 Id. ; Rodriguez, 878 P.2d at 82 (upholding the jury's verdict where there was competent evidence to support its finding that the defendant was negligent, but that such negligence was not a cause of the plaintiff's injuries).
IV. Jury Instructions
¶ 51 Plaintiff contends the trial court erroneously instructed the jury in three ways. First, plaintiff asserts that the trial court should have instructed the jury about Dep't of Regulatory Agencies Reg. 6102(a)(I), 4 Code Colo. Regs. 723-6102(a)(I), which adopts the truck driver hours-of-service limitations set forth in 49 C.F.R. 395.3 (2014). He contends that the regulations should have been included in Instruction 21, which instructed the jury about his theory of negligence per se, and that the trial court erred by giving the instruction without reference to those regulations.
¶ 52 Second, he argues that the trial court should have omitted any reference to the doctrine of assumption of the risk in Instruction 16, which defined negligence, because the evidence presented at trial did not support that instruction.
¶ 53 Third, plaintiff asserts that the trial court erred by giving Instructions 24 and 25, which instructed the jury that the law presumes a driver is negligent if the driver hits another vehicle in the rear. Plaintiff contends that this collision was a "barrier" collision to which the presumption does not apply.
¶ 54 We decline to address the merits of plaintiff's arguments regarding Instruction 21 and conclude that the court did not err in giving Instructions 16, 24, and 25.
A. Instruction 21
¶ 55 Plaintiff contends that the court erred when it failed to instruct the jury concerning Reg. 6102(a)(I) and 49 C.F.R. 395.3. Specifically, he asserts that the trial court's duty to correctly inform the jury on matters of the law required it to include the regulations in Instruction 21. Acknowledging that he did not raise this contention at trial, plaintiff urges us to review the merits of his contentions for plain error. Defendant contends we should not review plaintiff's argument because he has waived it. We agree with defendant.
¶ 56 Although we agree that a trial court is obligated to correctly instruct the jury on the law applicable to the case, that obligation "does not transform the court into an advocate for either party, nor does it relieve parties of the obligation to bring objections to the court's attention to preserve matters for appellate review." Vanderpool v. Loftness, 2012 COA 115, ¶ 35, 300 P.3d 953.
¶ 57 Before trial, the trial court gave plaintiff an opportunity to tender a proposed instruction regarding negligence per se and plaintiff provided an instruction that did not refer to either of the regulations he now contends should have been included. Moreover, the trial court held numerous jury instruction conferences throughout the course of trial, during which the parties discussed Instruction 21. Based on Rugemer's testimony about the regulations, it appears plaintiff was aware that such regulations existed. Yet at no time did plaintiff request that the regulations be included in any of the jury instructions.
¶ 58 Hence, plaintiff had ample opportunities to bring the regulations to the court's attention and advocate for their inclusion in the jury instructions. But he did not do so. Therefore, we conclude that the "trial court satisfied its responsibilit[y]" to correctly instruct the jury on the law. Hansen v. State Farm Mut. Auto. Ins. Co., 957 P.2d 1380, 1384 (Colo.1998).
¶ 59 Plaintiff contends that even if the trial court did not have a duty to include the regulations on its own, we should apply the plain error standard to review the merits of his contention regarding Instruction 21. We are not persuaded.
¶ 60 " C.R.C.P. 51 requires parties to object to alleged errors in instructions before they are given to the jury and only the objected-upon grounds will be considered on appeal." Day v. Johnson, 255 P.3d 1064, 1067 (Colo.2011). "[I]n general, if errors are not brought to the attention of the trial court, they are deemed waived,"
*780 Gorsich v. Double B Trading Co., Inc., 893 P.2d 1357, 1363 (Colo.App.1994), and arguments premised on such errors "will receive no consideration by an appellate court," Robinson v. City & Cnty. of Denver, 30 P.3d 677, 684 (Colo.App.2000). "Although the 'plain error' doctrine has been employed in a few civil cases involving instructional error[,] ... the circumstances justifying its application in civil cases are rare" and "reversal occurs only when necessary to avert unequivocal and manifest injustice." Harris Grp., Inc. v. Robinson, 209 P.3d 1188, 1195 (Colo.App.2009) (citing Blueflame Gas, Inc. v. Van Hoose, 679 P.2d 579, 586-87 (Colo.1984), and Robinson, 30 P.3d at 684 ).
¶ 61 We decline to review for plain error here. Rugemer testified about the federal regulation, which is identical to the state regulation governing truck drivers. See Reg. 6102(a)(I) (incorporating 49 C.F.R. 395.3 ). He opined that the purpose of the regulation was to prevent fatigue, and that Horton was violating the regulation at the time of the collision. During closing, plaintiff's counsel argued that Horton had violated the regulations and was "out of it" at the time of the collision. The jury was properly instructed that negligence "means ... the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect oneself or others from injury." Based on the information provided to it, the jury could have concluded that defendant had acted negligently based on the number of hours Horton had worked on the day of the collision. Therefore, we perceive no manifest injustice.
¶ 62 Accordingly, we decline to review the merits of plaintiff's contention regarding Instruction 21. See Day, 255 P.3d at 1067 ; Robinson, 30 P.3d at 684.
B. Instruction 16
¶ 63 Plaintiff contends the trial court erred by giving Instruction 16, which informed the jury about the doctrine of assumption of the risk. We disagree.
1. Background
¶ 64 At trial, plaintiff elicited testimony from the detective who had investigated the collision. The detective testified that, as a part of his investigation, he had spoken to plaintiff about the collision:
[Counsel]: In your conversations with [plaintiff], he told you that initially he was travelling eastbound, right?
[Detective]: Yes.
[Counsel]: And then he told you that after making a U-turn he had accelerated and hit the truck, right?
[Detective]: Yes.
[Counsel]: Because what he told you is that he thought the truck was proceeding through a green light on Logan, right?
[Detective]: Yes, that's what he said.
¶ 65 Based on the detective's testimony, defendant requested an instruction concerning assumption of the risk. The trial court determined that the detective's testimony tended to establish that plaintiff "accelerated toward something he saw." The court reasoned that such a statement was sufficient to support the instruction and included a description of the doctrine in Instruction 16.
2. Preservation and Standard of Review
¶ 66 The parties agree, and we concur, that plaintiff preserved his argument regarding Instruction 16.
¶ 67 "Trial courts have a duty to correctly instruct juries on matters of law." Bedor v. Johnson, 2013 CO 4, ¶ 8, 292 P.3d 924. "To determine whether the trial court has performed this duty, we first review de novo the jury instruction at issue to assess whether the instruction correctly states the law." Id . If it does, "we review a trial court's decision to give a particular jury instruction for an abuse of discretion." Day, 255 P.3d at 1067. A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair, or the instruction is unsupported by competent evidence in the record. Id . ; Bedor, ¶ 9.
3. Law
¶ 68 "[A] person assumes the risk of injury or damage if he voluntarily or unreasonably *781 exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved." § 13-21-111.7, C.R.S.2014. "[A]n instruction on assumption of risk, as a form of negligence, may be given with a comparative negligence instruction if ... the facts exist to support each instruction." Wark, 68 P.3d at 581.
¶ 69 "[A]ssumption of risk requires knowledge of the danger and consent to it." Carter v. Lovelace, 844 P.2d 1288, 1289 (Colo.App.1992) (emphasis in original). A plaintiff assumes a risk through his or her "unreasonable exposure to a known risk or ... voluntary but not necessarily unreasonable exposure to such a risk." Harris v. The Ark, 810 P.2d 226, 230 (Colo.1991). "In either event, [the] plaintiff must know of the risk he or she undertakes." Carter, 844 P.2d at 1289 ; see also Winkler v. Rocky Mountain Conference of United Methodist Church, 923 P.2d 152, 159 (Colo.App.1995) (An instruction on assumption of the risk is appropriate where there is evidence "that would support a finding that [the plaintiff] ... had knowledge of the danger to which she was exposed, consented to that danger, and assumed the risk.").
4. Application
¶ 70 At the outset, we reject plaintiff's contention that Instruction 16 misstated the law because it did not inform the jury about the effect of the assumption of the risk doctrine. In pertinent part, the instruction stated: "Negligence may also mean assumption of the risk...." The supreme court has held that one of the "obvious purposes of section 13-21-111.7 was to make clear that the voluntary assumption of a known risk was a variant of contributory negligence for purposes of tort liability under the comparative negligence statutory scheme." Harris, 810 P.2d at 233 n.7. Because the instruction stated that assumption of the risk is a form of negligence, it adequately informed the jury about its effect. See id .
¶ 71 Plaintiff contends that Instruction 16 should not have included any reference to assumption of the risk because his statement to the detective reveals that he thought Horton's truck was proceeding through the intersection. Therefore, he asserts, he did not have knowledge of, or consent to, the risk posed by Horton's truck, which was stopped at the time of the collision. We are not persuaded.
¶ 72 As the trial court determined, plaintiff's statements to the detective can fairly be read as an admission that he knew Horton's truck was in front of him and voluntarily accelerated towards it. Plaintiff testified that he had ridden motorcycles since the age of five, and a reasonable juror could conclude that any driver of such experience understands the risk and danger posed by a collision with another vehicle. Cf. Fay v. Kroblin Refrigerated Xpress, Inc., 644 P.2d 68, 70 (Colo.App.1981) (The plaintiff was negligent as a matter of law where he failed to avoid the undue risk he posed to himself by rear-ending a truck stopped on the side of a highway that was in his plain view). That plaintiff assumed Horton's truck was proceeding through-as opposed to stopped at-the intersection is not determinative of whether he assumed the risk of a collision. Cf. Mondy v. Gjesdal, 123 N.W.2d 33, 36 (N.D.1963) (The plaintiff assumed the risk of a rear-end collision where he erroneously believed the vehicle in front of him was travelling in the opposite direction when it was actually travelling in the same direction and failed to reduce his speed or take other precautionary measures to avoid the collision). Hence, there was sufficient evidence to support an instruction on assumption of the risk.
¶ 73 Plaintiff's reliance on Carter as support for a contrary conclusion is misplaced. There, the plaintiff was attempting to pass two oversized vehicles when he collided with the lead vehicle, which had begun to turn left onto a dirt road. 844 P.2d at 1289. A division of this court reasoned that the plaintiff did not "assume a 'known and obvious' risk when he attempted to pass" because "the road ahead was clear when he began passing the vehicles and the gravel turn-off was not visible." Id . at 1290.
¶ 74 According to the detective who investigated the collision in this case, plaintiff acknowledged that he saw Horton's truck in his lane of traffic and accelerated nevertheless.
*782 Thus, the factual situation in Carter differs from the one present here. See id . at 1289-90 ; cf. Castracane v. Campbell, 300 A.D.2d 704, 751 N.Y.S.2d 121, 122-24 (2002) (Assumption of the risk instruction was proper where there was evidence that the plaintiff saw the defendant's vehicle approaching and moved towards it).
¶ 75 Plaintiff also argues that his statements to the detective do not constitute evidentiary support for the instruction because they cannot be "taken conclusively as accurate" because of his brain injury. However, a party is not required to establish that the evidence upon which it relies for a jury instruction is conclusively accurate. See Vaccaro, ¶ 34 (determining the credibility of witnesses and the probative effect and weight of evidence "are issues properly left to the jury"). Rather, a party is entitled to a jury instruction if it is supported by sufficient competent evidence and it is consistent with the existing law. Devenyns v. Hartig, 983 P.2d 63, 70 (Colo.App.1998) ; Melton v. Larrabee, 832 P.2d 1069, 1072 (Colo.App.1992). Competent evidence is that which "satisfies the requirements of admissibility and tends to establish the fact at issue." People v. Saiz, 32 P.3d 441, 446 (Colo.2001). The detective's testimony was admissible and, as explained above, tended to establish sufficient facts to support an instruction on assumption of the risk.
¶ 76 We conclude that the trial court did not err by instructing the jury about assumption of the risk in Instruction 16.
C. Instructions 24 and 25
¶ 77 Plaintiff contends that the trial court abused its discretion by giving Instructions 24 and 25, which informed the jury that the law presumes a driver is negligent if the driver's vehicle hits another vehicle in the rear. Specifically, he argues that the trial court's decision to give the instructions was not supported by the evidence because the collision in this case was not a typical rear-end collision, but a barrier crash. He also asserts that the presumption is premised upon the doctrine of res ipsa loquitur and therefore may only be applied in favor of a plaintiff. We discern no error.
1. Preservation and Standard of Review
¶ 78 The parties agree, and we concur, that plaintiff preserved his argument that Instructions 24 and 25 should not have been given because of the nature of the collision at issue. Accordingly, we will review de novo the jury instructions to determine whether they correctly state the law. Day, 255 P.3d at 1067. If they do, we will review the trial court's decision to give the instructions, in light of the type of collision at issue, for an abuse of discretion. Id . A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair, or the instruction is unsupported by competent evidence in the record. Id . ; Bedor, ¶ 9.
¶ 79 However, plaintiff did not present the argument to the trial court that only a plaintiff may rely on the presumption that arises in a rear-end collision. "[A]rguments not presented to or ruled on by the district court cannot be raised for the first time on appeal." Sterenbuch v. Goss, 266 P.3d 428, 435 (Colo.App.2011). "Accordingly, we will not consider the issue." Crum v. April Corp., 62 P.3d 1039, 1042 (Colo.App.2002).
¶ 80 We also decline to review the merits of plaintiff's latter contention for plain error. At most, the jury could have used the presumption described in Instructions 24 and 25 to find plaintiff negligent. However, the jury never reached the issue of plaintiff's negligence because it decided that defendant's negligence was not a cause of the collision. Therefore, no manifest injustice resulted from the trial court's decision to instruct the jury about the presumption. See Harris, 209 P.3d at 1195 (Application of the plain error doctrine is rare in civil cases and "reversal occurs only when necessary to avert unequivocal and manifest injustice."); cf. Beeftu v. Creekside Ventures LLC, 37 P.3d 526, 529 (Colo.App.2001) ("Because the jury's verdict addressed causation but did not apportion fault for liability purposes, any error that occurred as to designation of the nonparty did not prejudice plaintiff's substantive rights and is therefore harmless.").
*783 2. Law
¶ 81 "A presumption is ... a rule based upon experience or public policy established in the law to assist the jury in uncovering the truth." Trione v. Mike Wallen Standard, Inc., 902 P.2d 454, 459 (Colo.App.1995). The presumption at issue in this case is derived from the doctrine of res ipsa loquitur. See Iacino v. Brown, 121 Colo. 450, 454, 217 P.2d 266, 268 (1950).
¶ 82 Res ipsa loquitur "is a rule of evidence which defines the circumstances under which a presumption of negligence will arise as a matter of law." Spoor v. Serota, 852 P.2d 1292, 1295 (Colo. App.1992). A party seeking a presumption instruction based on res ipsa loquitur must present evidence demonstrating that (1) causes other than negligence have been sufficiently eliminated; (2) the event is one that ordinarily does not occur absent negligence; and (3) the act at issue falls within the scope of the duty owed. Holmes v. Gamble, 655 P.2d 405, 408 (Colo.1982). These elements must be satisfied by a preponderance of the evidence, when the evidence is viewed in the light most favorable to the party seeking the presumption. Ravin v. Gambrell, 788 P.2d 817, 822 (Colo.1990).
¶ 83 "[S]atisfying res ipsa loquitur's elements creates a rebuttable presumption that 'imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption.' " Chapman v. Harner, 2014 CO 78, ¶ 25, 339 P.3d 519. When a party "introduces sufficient evidence to establish the presumption of negligence embodied in the doctrine of res ipsa loquitur, the trial court must instruct the jury as to the nature and effect of that doctrine," Ravin, 788 P.2d at 822, even where the negligent acts of the party attempting to employ it may also have contributed to the injury. Montgomery Elevator Co. v. Gordon, 619 P.2d 66, 70 (Colo.1980). Where the party against whom the presumption is directed produces sufficient evidence to rebut or meet the presumption, "a permissible inference of negligence remains" and the jury may consider this inference along with the other evidence to determine whether that party was negligent. Chapman, ¶ 25.
¶ 84 The general rule in a rear-end collision is that the driver of the car that follows and overtakes the car in front is presumed to be negligent. Kendrick v. Pippin, 252 P.3d 1052, 1061 (Colo.2011), abrogated by Bedor, 2013 CO 4, 292 P.3d 924 ; see also Bettner v. Boring, 764 P.2d 829, 832-33 (Colo.1988) ; Iacino, 121 Colo. at 454, 217 P.2d at 268. Both vehicles do not need to be in motion to trigger the presumption; it applies against a "driver who overtakes and collides with a car stopped ahead on the roadway." Huntoon v. TCI Cablevision of Colo., Inc., 969 P.2d 681, 687 (Colo.1998). Thus, a jury instruction informing the jury of presumed, but rebuttable, negligence is appropriate in certain rear-end collisions. See CJI-Civ. 11:12 (2014).
¶ 85 However, the instruction is not required as a matter of law in all cases involving a rear-end collision. Bettner, 764 P.2d at 833. The trial court should only give such an instruction if each of the res ipsa loquitur elements is met and "both vehicles involved in the accident were located on the road or on the shoulder, were in relatively close proximity, and were facing the same direction." Id . ; see also Kendrick, 252 P.3d at 1060-63 (explaining that elements of res ipsa loquitur must be established before Bettner requirements become an issue).
3. Application
¶ 86 The parties agree, and we concur, that Instructions 24 and 25 accurately stated the law. The dispute in this case centers on whether the evidence supported the giving of the instructions.
¶ 87 The rear-end presumption should not be applied "solely because the front of one vehicle makes contact with the rear of another vehicle." Bettner, 764 P.2d at 834. Instead, an instruction concerning the rear-end presumption should only be given where the evidence presented satisfies the elements of res ipsa loquitur by a preponderance of the evidence, Kendrick, 252 P.3d at 1060-63, and meets the three elements set forth in Bettner, 764 P.2d at 833.
¶ 88 In this case, neither party presented any evidence to suggest that the collision was caused by anything other than negligence. Cf. id. at 834 (icy conditions could have *784 caused collision even if defendant exercised reasonable care); Kendrick v. Pippin, 222 P.3d 380, 385-86 (Colo.App.2009), rev'd, 252 P.3d 1052 (same); Devenyns, 983 P.2d at 70 (same). To the contrary, each party contended that the other party's negligence was the cause of the collision.
¶ 89 "The mere happening of an accident does not raise a presumption of negligence." Hamilton v. Smith, 163 Colo. 88, 90, 428 P.2d 706, 708 (1967). Whether the event at issue would ordinarily occur absent negligence must be determined by the specific facts and circumstances of the case. See Martin v. Minnard, 862 P.2d 1014, 1017 (Colo.App.1993). In this case, the parties presented opposing theories of liability and introduced evidence to support each of their respective theories.
¶ 90 Plaintiff contended the collision occurred as a result of Horton's negligent failure to activate his taillights, see § 42-4204(1), C.R.S. 2014 (Every vehicle "shall display lighted lamps and illuminating devices" at night.); proceed in a timely manner through a green light, see § 42-4-603(1), C.R.S.2014 (no driver may disobey the instructions of an official traffic control device); and remove his truck from the road after he had become fatigued.
¶ 91 Defendant argued the collision was the result of plaintiff's negligent failure to keep a proper lookout. See § 42-4-1402(1), C.R.S.2014 (a person who drives in an imprudent manner is guilty of careless driving); see also Fay , 644 P.2d at 70 ("[A] driver of a motor vehicle has a duty to maintain a proper lookout and watch where he is driving so that when he sees an object plainly visible before him, he can stop his vehicle to avoid a collision.").
¶ 92 While the parties' accounts of the collision differ significantly, the parties seem to agree that this collision would not have occurred if both parties had operated their vehicles in a reasonably prudent manner. Furthermore, past experience leads us to conclude that an event such as this one does not ordinarily occur unless someone has been negligent. See Kendrick, 252 P.3d at 1061. Thus, this collision is the type of collision that would not have occurred absent negligence.
¶ 93 As drivers, both plaintiff and Horton had a duty to operate their vehicles with reasonable care. See Hesse v. McClintic, 176 P.3d 759, 762 (Colo.2008). Accordingly, both plaintiff's and defendant's acts and omissions fall within the scope of their respective duties.
¶ 94 The parties do not appear to dispute that the collision occurred in the inside westbound lane of Colfax Avenue, that the vehicles were within one block of one another when plaintiff made a U-turn, or that both vehicles were facing west. Thus, the parties do not dispute that the Bettner requirements were satisfied by the facts of this case. See 764 P.2d at 833.
¶ 95 Instead, plaintiff contends that defendant was not entitled to an instruction regarding the rear-end presumption because the collision in this case amounted to a barrier crash. Specifically, plaintiff asserts that this was not a typical rear-end collision because Horton's truck was stopped at an intersection when the collision occurred and did not move forward as a result of the collision. We are not persuaded.
¶ 96 It is clear that the rear-end presumption applies when a "driver ... overtakes and collides with a car stopped ahead on the roadway." Huntoon, 969 P.2d at 687 ; see also Iacino, 121 Colo. at 452-53, 217 P.2d at 267-68 (rear-end presumption applied where the defendant collided with the rear portion of the plaintiff's vehicle, which was parked at the curb). Plaintiff has not pointed to, nor have we found, any authority to suggest that the presumption does not apply when the lead vehicle does not move forward as a result of the collision.
¶ 97 For all these reasons, we conclude that the trial court did not err by giving Instructions 24 and 25.
V. Conclusion
¶ 98 The judgment is affirmed.
JUDGE BERNARD and JUDGE J. JONES concur.